**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CHRISTOPHER E. SWAN,                    )
                                        )
                  Defendant/Petitioner, )
                                        )
v.                                      )          No. 03-CR-72-JHP
                                        )          No. 04-CV-566-JHP
THE UNITED STATES OF AMERICA,           )
                                        )
                  Plaintiff/Respondent. )

## ORDER

Now before the Court are Defendant's Motion To Vacate, Set Aside, Or Correct Sentence

Pursuant To 28 U.S.C. § 2255 (Docket No. 41), filed July 19, 2004; the United States' Response

in Opposition to Defendant Swan's Motion under 28 U.S.C. § 2255 Motion (Docket No. 51),

filed June 13, 2005; the United States' Supplement to Response in Opposition to Defendant

Swan's Motion under 28 U.S.C. § 2255 Motion (Docket No. 52), filed June 30, 2005; and

Petitioner's Reply to United States' Response in Opposition (Docket No. 53), filed July 5, 2005.[1]

The United States' response brief includes an affidavit from Petitioner's trial counsel, Mr. James

R. Rhodes, III ("counsel").[2]  Petitioner's reply consisted of an affidavit by Petitioner in response

to the affidavit of Mr. Rhodes included in the United States' response brief.

---

[1] Petitioner's motion was filed in Case No. 03-CR-72-P (Docket No. 41) and Case No.
04-CV-566-P (Docket No. 1).

[2] Because Mr. Rhodes was appearing *pro hac vice* in the matter, Ms. Gina Cowley-
Crabtree served as local counsel for Petitioner.

As an initial matter, the Court finds that an evidentiary hearing as to the issues raised in Petitioner's §2255 motion is not necessary as the issues can be resolved on the basis of the record presently before the Court. <u>See</u> <u>Townsend v. Sain</u>, 372 U.S. 293, 318 (1963), <u>overruled on other grounds by Keeney v. Tomayo-Reyes</u>, 504 U.S. 1 (1992).  For the reasons set forth below, Petitioner's motion is hereby denied.

I

On May 7, 2003, Petitioner was charged in a one-count indictment with violating 16 U.S.C. § § 3372(a)(2)(A) and 3373(d)(1)(B), in that he, along with other persons,  "aiding and abetting each other, knowingly possessed and transported in interstate commerce from the Northern District of Oklahoma to the State of Arkansas, approximately 150 pounds of processed and unprocessed roe of *Polydon spathula* ("paddlefish"), of a value exceeding $350.00, in violation of Title 29, Oklahoma Statutes Annotated Section 6-303.1."[3]   (Docket No. 1.)

---

[3] *Polydon Spathula* (Paddlefish) is a species of fish which inhabits lakes, rivers, and streams in the Northern District of Oklahoma and other surrounding states.  Paddlefish eggs are processed and sold as caviar. The paddlefish was once widely distributed throughout the central and southern United States.  However, due to dams and excessive commercial roe harvesting, the fish is listed as "endangered" in several states within the United States.  Because of water development projects and excessive commercial harvesting of roe, the paddlefish population in Oklahoma dwindled to two self-sustaining populations in the 1970s; however, the paddlefish population is making a recovery.  Oklahoma laws prohibit the possession of more than fifty pounds of unprocessed Paddlefish eggs (roe) or five pounds of processed eggs (caviar).  Additionally, it is illegal in the state of Oklahoma to ship, transport or cause to be removed from the state, any unprocessed or processed paddlefish eggs.

2

On May 30, 2003, Petitioner entered a plea of guilty to the Indictment, without the benefit of a plea agreement.[4]  In his Petition to Enter a Plea of Guilty (the "Petition"), Petitioner acknowledged that the Court must be satisfied that there was a factual basis for a plea of "guilty" before Petitioner's plea could be accepted.  (Docket No. 15 at 2.)  At his change of plea hearing, Petitioner stated in open court that he had aided and abetted Jim Wever in transporting processed and unprocessed paddlefish roe that had been illegally harvested in Oklahoma into the State of Arkansas.[5]  (Tr. of May 30, 2003 Hrg. at 15.)   Petitioner's Petition to Enter a Plea of Guilty, which was signed by Petitioner in open court, contained the following admission of the factual basis for his guilty plea:

> [O]n or about May 17, 2000 I aided and abetted Jim Wever, Senior, in knowingly possessing and transporting in interstate commerce from the Northern District of Oklahoma to the State of Arkansas approximately 150 (one-hundred and fifty) pounds of processed and unprocessed roe of paddlefish having a value exceeding $350.00.  I knew or should have known such roe had been illegally obtained in Oklahoma.

---

[4] This case was originally assigned to Judge Sven Erik Holmes.  It was transferred to the undersigned on March 22, 2005.

[5] In March 1999, the Oklahoma Department of Wildlife received information that James Wever, Sr., was unlawfully harvesting, processing, and selling paddlefish eggs.  Game Wardens with the Oklahoma Department of Wildlife observed Wever's poaching activities through electronic surveillance and undercover officers.  The Game Wardens learned that the roe harvested by the Wevers was then taken to the Wever residence in insulated coolers where it was processed and packaged.  The Game Wardens also discovered that Christopher  Swan had taught Lataunia Wever how to process the eggs.  Swan supplied the Wevers with the steel screen, scale, bowls and salt necessary to process the eggs.  The Weavers then sold the roe they harvested (both processed and unprocessed) to Swan.  Throughout this conspiracy the Wevers traveled to Arkansas, where they sold the roe to Swan.  The Wevers were also prosecuted for these activities, and received probation for their role in the offense.

3

(Docket No. 15 at 2.)  The Court found a factual basis for Petitioner's plea of guilty and further found that it was knowingly and voluntarily made.  (Tr. of May 30, 2003 Hrg. at 17.)

On October 30, 2003, the Court held a sentencing hearing.  At that hearing, Petitioner's counsel objected to the to the Presentence Investigation Report ("PSI Report"), requesting that the Court assess a different value for the roe involved in the offense and arguing that the Court should apply a different version of the United States Sentencing Guidelines ("USSG" or "the Guidelines") than the version used in the PSI Report.  After hearing counsel's arguments and speaking to the Assistant United States Attorney, Neal Kirkpatrick (the "AUSA"), the Court determined that the sentencing should be continued so that all parties could be fully prepared to address the issues raised by counsel.

The Court held a subsequent sentencing hearing on November 14, 2003.  At that hearing, counsel for Petitioner objected to a two (2) point sentencing enhancement for creating "a significant risk of infestation or disease transmission potentially harmful to humans"  pursuant to USSG §§ 2Q2.1(b)(2)(B).  Counsel also renewed his request for the Court to use a lesser per pound value in calculating the total value of the illegal roe attributed to Petitioner.[6]  Finally, counsel requested a downward departure because Mr. Wever, whom Petitioner pled guilty to aiding and abetting in the offense, had received a sentence of probation for his role in the crime.

The Court denied counsel's request for a downward departure and his request that the Court not apply the two-point enhancement for creating "a significant risk of infestation or

---

[6] The parties had resolved the issue of which version of the Sentencing Guidelines counsel should be used prior to the November 14, 2003 hearing.

disease transmission potentially harmful to humans;" however, the Court did utilize a lower per pound value than the value used in the PSI Report in assessing the total value of the roe attributed to Petitioner.  (Tr. of Nov. 14, 2003 Hrg. at 14).  Based on the PSI Report (but using the lower value for the roe), the Court found Petitioner's offense level to be eleven (11) and his criminal history category to be one (1).  Pursuant to the Federal Sentencing Guidelines, the Court found Petitioner's sentencing range to be eight (8) to fourteen (14) months.  Petitioner was also eligible to receive a fine of $3,000 to $30,000.  The Court sentenced Petitioner at the low end of the guideline range to 4 months imprisonment, and 4 months home confinement, and imposed a three (3) year term of supervised release following the term of custody.  The Court also ordered Petitioner to pay a fine of $10,000.  Petitioner appealed his sentence, arguing that the Court should not have applied the two-point upward enhancement for creating "a significant risk of infestation or disease transmission potentially harmful to humans."  The Tenth Circuit affirmed the sentence imposed by this Court.

## II

Section 2255 of Title 28 of the United States Code sets forth a detailed statute of limitations for filing a motion under that section.[7]  Specifically, §2255(1) provides that a one-

[7]  That statute states, in relevant part:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of —
>
> (1)     the date on which the judgment of conviction becomes final;
> (2)     the date on which the impediment to making a

year limitation period shall run from "the date on which the judgment of conviction becomes

final." 28 U.S.C. § 2255(1).   Petitioner's motion was clearly filed within one year from the date

the judgment of conviction became final, and is therefore timely.

III

A petitioner is entitled to relief pursuant to 28 U.S.C. § 2255 if: (1) his sentence was

imposed in violation of the Constitution or laws of the United States; (2) the court was without

jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum allowed

by law; or (4) the sentence is otherwise subject to collateral attack.[8]  28 U.S.C. § 2255.

Petitioner maintains that he is entitled to relief because his sentence was imposed in violation of

the Constitution and laws of the United States.

_____

|      | motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; |
|------|---|
| (3)  | the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or |
| (4)  | the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. |

28 U.S.C. §2255.

[8] This "catch-all" category is rarely invoked and includes only assignments of error that reveal "fundamental defects" which "result in a complete miscarriage of justice." See Hill v. United States, 368 U.S. 424, 428 (1962).

In the instant motion, Petitioner asserts nine (9) separate bases for relief: (1) that he was denied his constitutional right to effective assistance of counsel because counsel did not present witnesses or evidence at sentencing; (2) that he was denied his constitutional right to effective assistance of counsel because counsel did not allow Petitioner to testify on his own behalf at sentencing; (3) that he was denied his constitutional right to effective assistance of counsel because counsel did not understand the issues that needed to be addressed at sentencing; (4) that he was denied his constitutional right to effective assistance of counsel because counsel failed to predict Blakely v. Washington and to preserve Petitioner's right to have sentencing factors presented to a jury; (5) that he was denied his constitutional right to effective assistance of counsel because counsel failed to object to the Court's use of the preponderance of the evidence standard in determining whether to apply the two-point enhancement; (6) that he was denied his constitutional right to effective assistance of counsel because counsel failed to argue for a downward departure for "aberrant behavior" under the Guidelines; (7) that he was denied his constitutional right to effective assistance of counsel because counsel denied Petitioner access to the Guidelines prior ro the entry of his guilty plea; (8) that he was denied his constitutional right to effective assistance of counsel, thereby rendering his guilty plea defective, because counsel and the AUSA promised Petitioner that he would not receive prison time if he pled guilty to the offense; and (9) that he was denied his constitutional right to effective assistance of counsel, thereby rendering his guilty plea defective, because, prior to sentencing, counsel failed to inform Petitioner that good faith was a defense to crime with which he was charged.  The Court will address each of  Petitioner's bases for relief in turn.

7

A. INEFFECTIVE ASSISTANCE OF COUNSEL

As noted above, Petitioner did not directly appeal his nine (9) separate ineffective assistance of counsel claims.  Generally, claims not raised on direct appeal are procedurally barred unless the petitioner can prove cause and actual prejudice or that the Court's ruling will result in a fundamental miscarriage of justice. See United States v. Frady, 456 U.S. 152, 167 (1982).  The purpose of the procedural default rule is to conserve judicial resources and to protect the law's important interest in the finality of judgments. See Massaro v. United States, 538 U.S. 500 (2003). However, there are limited exceptions to this rule.  A petitioner may raise an ineffective assistance of counsel claim despite failing to raise that claim on direct appeal. See id. at 504. As the Massaro court explained, "[s]ubjecting ineffective-assistance claims to the usual cause-and-prejudice rule would create perverse incentives for counsel on direct appeal.  To ensure that a potential ineffective assistance claim is not waived – and to avoid incurring a claim of ineffective counsel at the appellate stage – counsel would be pressured to bring claims of ineffective trial counsel, regardless of merit." Id. at 506.  Therefore, although Petitioner did not raise his ineffective assistance of counsel claims on direct appeal, those claims are properly before the Court.

The Court of Appeals for the Tenth Circuit has summarized the Supreme Court's test for determining whether a petitioner has a valid ineffective assistance of counsel claim:

> To establish a claim for ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was constitutionally deficient; and (2) counsel's deficient performance was prejudicial.

United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

To satisfy the first prong, Petitioner must show that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  See Strickland, 466 U.S. at 687-88.  "Counsel's performance is deficient if the representation falls below an objective standard of reasonableness." Cook, 45 F.3d at 392.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance," and review of counsel's performance must be highly deferential.  Id. at 688.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a petitioner must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Cook, 45 F.3d at 392.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  In other words, in order to establish that he was prejudiced by ineffective assistance of counsel, Petitioner must show that counsel's errors were so serious that the outcome would have been different had the errors not occurred. See United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993); see also, Hill v. Lockhart, 474 U.S. 52, 59 (1985) (holding that, in order to satisfy the "actual prejudice" prong,

9

Petitioner must prove that, but for counsel's deficient performance, Petitioner would not have entered into a guilty plea and instead would have gone to trial).

Petitioner raises eight (8) specific instances in which counsel's conduct was allegedly constitutionally deficient. As set forth below, the Court finds that each of Petitioner's ineffective assistance of counsel claims is without merit, and for that reason, those claims shall be denied.

1. Counsel's failure to present witnesses or evidence at sentencing

Petitioner maintains that counsel's failure to present witnesses or evidence at sentencing forms a sufficient basis for his ineffective assistance of counsel claim. The Court disagrees. Petitioner does not offer any further argument or background for this allegation in his § 2255 motion. He does not state whom he would have called as witnesses, to what those witnesses would have testified, or how that testimony would have affected his sentence, nor does he state specifically what evidence counsel should have presented on his behalf.[9]   Rather, Petitioner merely states that he provided counsel with the information included in the affidavits attached to his § 2255 motion and told counsel that he thought that they needed to prepare to present evidence at the hearing, "but Mr. Rhodes did not want to listen to him." (Docket No. 41 at 8.)

The record does show, however, that counsel competently and effectively addressed the issues raised by the PSI Report without the need to call witnesses, and that counsel did present the necessary evidence to the Court. In particular, counsel vigorously argued that the Court should not apply the two point enhancement for creating a risk of danger to the public health.

---

[9] The Court will separately address Petitioner's claim that counsel refused to allow him to testify on his own behalf.

Moreover, counsel successfully argued that the Court should assess a lower value for the paddlefish roe attributed to Petitioner, and presented evidence to the Court in support of this contention.

Thus, the record does not support Petitioner's contention that counsel failed to present evidence at sentencing.  Moreover, Petitioner has not shown that, by deciding to present evidence to the Court without calling witnesses, counsel performed below the level expected from a reasonably competent attorney in criminal cases.  See Strickland, 466 U.S. at 687-88. Finally, Petitioner has not shown that any errors committed by counsel in not calling witnesses or presenting other evidence at sentencing were so serious that the outcome would have been different had the errors not occurred. See Haddock, 12 F.3d at 955.  On this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by Strickland.  Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

2.  <u>Counsel's failure  to allow Petitioner to testify on his own behalf</u>

Petitioner argues that counsel's failure to allow Petitioner to testify on his own behalf at sentencing forms a sufficient basis for his ineffective assistance of counsel claim.  The Court disagrees.

First, Petitioner agreed to enter a plea of guilty instead of going to trial, and so cannot be heard to say that he was deprived of his constitutional right tot testify on his own behalf as to his guilt or innocence.

Second, the record does not support Petitioner's contention that counsel prevented him from testifying.  As stated above, the court held two sentencing hearings in this matter.[10]  At the first hearing, held on October 30, 2003, counsel for Petitioner represented to the Court that he was prepared to put Petitioner on the stand to testify about the market price for paddlefish roe. (<u>See</u> Tr. of Oct. 30, 2003 Hrg. at 6.)  However, the court found that Petitioner's testimony was not necessary, as it was clear that Petitioner would testify that the prices set forth in the PSI Report were too high, and counsel could easily provide the pricing information Petitioner believed should be relied upon by the Court without putting Petitioner on the stand.  In his affidavit, counsel for Petitioner states that he did not tell Petitioner that he could not testify or make a statement on his own behalf at either sentencing hearing.  (Aff. of James Rhodes, Docket No. 51, Ex. A at 7.)  Thus, the record makes clear that counsel did not refuse to allow Petitioner to testify.

---

[10] The first hearing was continued so that the parties could better prepare to address the issues raised by the PSI Report.

Moreover, as stated above, counsel vigorously argued that Petitioner should not receive a two-level enhancement for creating a risk of danger to the public health.  Petitioner, in his § 2255 motion, does not state what testimony he would have offered that would have enhanced counsel's argument or caused the Court to reach a different decision regarding his sentence.

Finally, the Court notes that Petitioner was allowed to make a statement on his own behalf at sentencing in accordance with Fed. R. Crim. P. 32(4)(A).  Petitioner spoke to the Court on his own behalf regarding the safety measures he took to ensure that the public was not at risk due to unsafe roe entering the market.

Based on the above, the Court finds that, on this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by <u>Strickland</u>. Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

3.  <u>Counsel's failure to understand the issues</u>

Petitioner maintains that counsel's failure to understand the relevant sentencing issues forms a sufficient basis for his ineffective assistance of counsel claim.  The Court disagrees. Petitioner does not offer any further argument or background for this allegation in his § 2255 motion.  The Court finds that Petitioner has failed to produce any evidence in support of this allegation, and that the record indicates that it is false.  There is no evidence in the record that counsel failed to understand the relevant sentencing issues so as to render him constitutionally ineffective.  As noted above, counsel argued vigorously and cogently against the Court's application of a two-point sentencing enhancement for creating a risk of harm to the public

13

health, and successfully argued that the Court should use a lower price than the prices set forth in the PSI Report in assessing the value of the illegal roe attributed to Petitioner.

Based on the above, the Court finds that, on this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by Strickland. Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

4. Counsel's failure to predict Blakely v. Washington and to preserve Petitioner's constitutional right to have sentencing factors presented to a jury

Petitioner argues that he was "entitled to a jury trial applying the beyond a reasonable doubt standard to determine whether he created a significant risk to the public health by his offense, and sentencing counsel was also constitutionally ineffective by failing to preserve that issue by failing to object and demand a jury trial" based upon the Supreme Court decisions of Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 538 U.S. 584 (2002). Docket No. 41 at 9 (emphasis in original). Petitioner argues that his counsel on appeal was ineffective for the same reason. The Court disagrees.

The Court finds that Petitioner has failed to show that counsel was ineffective under Strickland by essentially failing to predict Blakely (or its successors, United States v. Booker and United States v. Fanfan). The Tenth Circuit has held:

> When reviewing an ineffective assistance of counsel claim, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Consequently, we have rejected ineffective assistance claims where a defendant faults his former counsel not for failing to find existing law, but for failing to predict future law and have warned that clairvoyance is not a required attribute of effective representation.

14

Bullock v. Carver, 297 F.3d 1036, 1052 (10th Cir. 2002) (internal quotations and citations omitted).  Thus, on this claim, the Court finds that Petitioner has failed to show that counsel performed below the level expected from a reasonably competent attorney in criminal cases and so was constitutionally deficient.  See Strickland, 466 U.S. at 687-88.  Therefore, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

 5.  Counsel's failure to object to the Court's use of the preponderance of the evidence standard in determining whether to apply the two-point enhancement

 Petitioner asserts that trial and appellate counsel were constitutionally ineffective for failing to object to the Court's use of the preponderance of the evidence standard in deciding whether to apply the two-point sentencing enhancement for creating a risk of safety to the public health.  The Court does not agree.  Following the filing of Petitioner's § 2255 motion, the Supreme Court decided United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), wherein it held that Blakely applies to the Guidelines, and that mandatory enforcement of the Guidelines was therefore unconstitutional under the current system.  As set forth above, the Court does not find that counsel was constitutionally ineffective for failing to predict Blakely and Booker. Moreover, following Booker, the Tenth Circuit has held that advisory sentencing enhancements are properly determined by the district courts using a preponderance of the evidence standard. United States v. Magallanez, 2005 WL 1155913 (10th Cir. May 17, 2005) ("Both before and under the Guidelines, facts relevant to sentencing have generally been found by a preponderance of the evidence . . . . Nothing in Booker changes this analysis.").  Thus, Petitioner was not

15

prejudiced by the Court's use of the preponderance standard at sentencing, and the Court accordingly denies Petitioner's ineffective assistance of counsel claim on this ground.

　　　6.　Counsel's failure to request a downward departure on the ground that Petitioner's conduct in committing the charged offense was aberrant behavior

　　　Petitioner next asserts that counsel's failure to request a downward departure for aberrant behavior under USSG § 5K2.20 of the Guidelines forms a sufficient basis for his ineffective assistance of counsel claim.  The Court disagrees.

　　　USSG § K2.20 provides, in relevant part, "A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior."  USSG § K2.20. p.s. (2001).  The note to this provision provides in pertinent part:

> 1.　For purposes of this policy statement –
> "Aberrant behavior" means a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked departure from an otherwise law-abiding life.

USSG 5K2.20, comment (n. 1) (2001).

　　　While it is true that the Indictment to which Petitioner pled guilty alleged only a single transaction, the PSI Report indicates that Petitioner was involved in numerous transactions involving the illegal transport of paddlefish roe out of the State of Oklahoma over a period of several years.  Petitioner did not object to this portion of the PSI Report.  Moreover, in his affidavit, counsel states that Petitioner told him that Petitioner had been involved in numerous such transactions with the Wevers.  (See Aff. of James Rhodes, Docket No. 51, Ex. A, at 4.)

16

Therefore, it does appear that a departure under USSG § 5K2.20 was warranted in Petitioner's case, and counsel did not perform below the level expected from a reasonably competent attorney in criminal cases in deciding not to request such a departure.  See Strickland, 466 U.S. at 687-88.  Moreover, given the above facts contained in the PSI Report, it is not likely that the Court would have granted such a departure, had it been requested.  Thus, Petitioner has also failed to show that he was prejudiced by counsel's failure to request the departure.

Based on the above, the Court finds that counsel was not ineffective under Strickland for failing to request a downward departure for aberrant behavior.  Thus, on this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by Strickland.  Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

7.  Counsel's failure to allow Petitioner access to the Sentencing Guidelines

Petitioner asserts that counsel never showed him the Guidelines, nor did he discuss their contents with Petitioner.  The Court finds that Petitioner has failed to produce any evidence in support of these allegations, and that the record indicates that they are false.

There is no evidence in the record that counsel refused to allow Petitioner to have access to the Guidelines, or that he failed to discuss the Guidelines and their implications with Petitioner.  As stated above, when Petitioner entered his guilty plea, he submitted a Petition to Enter Plea of Guilty to the Court (Docket No. 15).  Petitioner executed this document in open court, and swore that he had read the Petition, had discussed every part of it with his attorney, and that every part of the Petition was true and correct.  (See Docket No. 15 at 6.)  In that

17

Petition, Petitioner stated, "I have been advised by counsel that I will be sentenced pursuant to the sentencing guidelines procedure established by Title 18 U.S.C. 3553 et seq." (Id. at 5.) Counsel also executed a Statement of Counsel (Docket No. 14), which provided, in relevant part, "I have reviewed in detail with Mr. Swan each of the provisions of the Sentencing Guidelines that may possibly apply in this case."  Petitioner also executed this statement in open Court, indicating that he agreed that the representations contained therein were true.  Thus, Petitioner represented to the Court that counsel did review the Guidelines with him in detail prior to his entry of a guilty plea.

Therefore, on this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by Strickland.  Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

8.  Petitioner was denied his constitutional right to effective assistance of counsel, thereby rendering his guilty plea defective, because counsel and the AUSA promised Petitioner that he would not receive prison time if he pled guilty to the offense

Petitioner asserts that he received ineffective assistance of counsel, which rendered his guilty plea involuntary, because both his counsel and the AUSA told him that he was not facing prison time upon a plea of guilty, when in fact he was facing prison time.  The Court finds that Petitioner's allegations in this regard are not supported by the record, and do not form a sufficient basis for an ineffective assistance of counsel claim.

Counsel states in his affidavit that while he did tell Petitioner that he did not think that Petitioner would have to go to prison if he pled guilty, he also repeatedly told Petitioner that sentencing was within the sole prerogative of the sentencing judge.  (See Aff. of James Rhodes,

Docket No. 51 at 2.)  Counsel also affies that while the AUSA told Petitioner that the government would not <u>request</u> that Petitioner receive prison time, the AUSA never <u>promised</u> that Petitioner would not have to serve any time in prison.

The record is clear that, prior to pleading guilty, Petitioner was aware that the maximum sentence he could receive for his offense could include prison time.  His Petition included the statement, "My attorney informed me that the plea of "GUILTY" could subject me to a maximum punishment, per count which, as provided by law is (5) five years imprisonment and/or a fine of $20,000 (twenty-thousand)." (Docket No. 15 at 3.)  As noted above, the Petition was signed by Petitioner in open Court, and Petitioner stated, under oath that he was fully aware of its contents.  The Petition also made clear that Petitioner was aware that his sentence would be determined by the Court alone.  Petitioner stated the following in his Petition:

> I have been advised by counsel that I will be sentenced pursuant to the sentencing guidelines procedure established by Title 18 U.S.C. 3553 <u>et  seq</u>.  **I understand that sentencing is a matter left exclusively to the province of the Court; and I understand that the sentence imposed by the Court may be within the guideline table range provided by law**, or for good cause stated the Court may depart therefrom after a review of all relevant facts and circumstances of my case have been considered by the Court.

(Docket No. 15 at 4-5 (emphasis added).)  The Court also orally informed Petitioner of the maximum sentence he faced upon a plea of guilty, and asked Petitioner if he was aware of the maximum sentence the Court could impose.  Petitioner stated, under oath, that he was aware of the maximum penalty, which included a term of imprisonment.[11]

---

[11] Petitioner suggests, in his § 2255 motion, that he was unable to read the Petition at his change of plea hearing because he was suffering from the effects of spinal meningitis, although he does not raise a specific claim regarding this allegation in his § 2255 motion.  In this regard, the Court notes that Petitioner repeatedly affirmed, under oath, that he had read the forms

More importantly, at Petitioner's change of plea hearing, Petitioner expressly represented to the Court, under oath, that he was not relying on any promise or inducement as part of his entry of a guilty plea.  At the change of plea hearing, the following exchange occurred:

THE COURT:  All right, are there any, Mr. Swan, any promises or inducements made of any kind whatsoever by the United States as part of you entering into this plea today, sir?

THE DEFENDANT:  No, your honor.

(Tr. of May 30, 2003 Hrg. at 11.)

Moreover, the following exchange occurred between the Court and counsel:

THE COURT:  Mr. Rhodes, are you aware of any promises, threats, or inducements made to Mr. Swan with the purpose or effect of causing him to enter a plea of guilty in this case?

COUNSEL:  I am aware of none.

(Id. at 12.)  At this point, the Court provided counsel with a written statement, memorializing the representations made by counsel and Petitioner with regard to the voluntariness of the guilty plea.  Both counsel and Petitioner signed this statement in open court.[12]  Petitioner also stated, in

---

provided by the court and consulted with his attorney about such forms before signing them. Moreover, the Court orally questioned Petitioner about his understanding of the waiver of his rights, the possible sentence he faced, and the voluntariness of his guilty plea before accepting his plea.  Petitioner affirmed to the Court, under oath, that he has fully cognizant of the rights he was waiving and the consequences of his plea.

[12] The statement signed by counsel and Petitioner provided:

In furtherance of the Court's determination required pursuant to Rule 11(d) of the Criminal Rules of Procedure, the undersigned attorney for Christopher Swan, the defendant herein, states and avers as follows:
  1.  I have reviewed in detail with Mr. Swan each of the provisions of the Sentencing Guidelines that may possibly apply in this case.
  3.  **I am not aware of any promises, threats, or inducements made to Mr. Swan with the purpose or effect of causing him to enter**

20

his Petition, that "I also inform the Court that I am not relying in entering my plea of "GUILTY" on any representation from my attorney or from the Government or any other source that has not been revealed to the Court and made part of this record."  (Docket No. 15 at 3.)

Thus, the record before the Court, particularly the representations made by Petitioner, under oath, to the Court indicate that Petitioner did not enter his guilty plea in reliance on any promise or inducement by either the AUSA or by Petitioner's own counsel.  Moreover, the record does indicate that Petitioner was aware that his sentence would be determined by the Court alone, and that his could be punishable by a term of imprisonment.  Therefore, on this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by Strickland.  Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

9. Petitioner was denied his constitutional right to effective assistance of counsel, thereby rendering his guilty plea defective, because, prior to sentencing, counsel failed to inform Petitioner that good faith was a defense to crime with which he was charged

Petitioner asserts that counsel's failure to inform him that good faith was a defense to the crime with which he was charged deprived him of his constitutional right to effective assistance of counsel and rendered his guilty plea involuntary.  The Court finds that Petitioner has failed to establish a claim in this regard.

Counsel, in his affidavit, states that he did not advise Petitioner that he had a good faith defense because, based on what Petitioner told him, counsel did not believe that such a defense

---

**a plea of guilty in this case.**

(Docket No. 14 (emphasis added).)

was available to Petitioner.  (See Aff. of James Rhodes, Docket No. 51, Ex. A at 4.)[13]  Counsel stated that Petitioner had told him that he knew that some of the paddlefish roe he had purchased from the Wevers was harvested in Oklahoma, and he knew that exporting the roe from the State of Oklahoma was illegal.  Counsel's statement that Petitioner knowingly committed the offense to which he pled guilty is supported by the record.

The Petition signed by Petitioner in open court at his change of plea hearing contained the following statement:

> I know that the Court must be satisfied that there is a factual basis for a plea of "GUILTY" before my plea can be accepted.  I represent to the Court that I did the following acts in connection with the charges made against me in the Government's Indictment: That on or about May 17, 2000 I aided and abetted Jim Wever, Senior, in knowingly possessing and transporting in interstate commerce from the Northern District of Oklahoma to the State of Arkansas approximately 150 (one-hundred and fifty) pounds of processed and unprocessed roe of paddlefish having a value exceeding $350.00.  **I knew or should have known such roe had been illegally obtained in Oklahoma.**

(Docket No. 15 at 2 (emphasis added.)

Thus, Petitioner represented to the Court that he was aware, or should have been aware, that the roe he received from the Wevers had been obtained in violation of the law.  Moreover, Petitioner also stated, in his Petition, that "I know that the Court will not permit anyone to plead 'GUILTY' who maintains he is innocent, and with that in mind, and because I am 'GUILTY' and do not believe I am innocent, I wish to plead 'GUILTY' as follows: Guilty as charged in the Indictment."  (Docket No. 15 at 3.)

---

[13] Counsel stated, in his affidavit, "For me to argue this [a good faith defense] on behalf of the defendant, would be to suborn perjury."  (Aff. of James Rhodes, Docket No. 51, Ex. A at 4.)

As set forth above, the Indictment to which Petitioner pled guilty provided that he violated 16 U.S.C. § § 3372(a)(2)(A) and 3373(d)(1)(B), in that he, along with other persons, "aiding and abetting each other, **knowingly** possessed and transported in interstate commerce from the Northern District of Oklahoma to the State of Arkansas, approximately 150 pounds of processed and unprocessed roe of *Polydon spathula* ("paddlefish"), of a value exceeding $350.00, in violation of Title 29, Oklahoma Statutes Annotated Section 6-303.1."  (Docket No. 1 (emphasis added.)  Thus, the record, particularly Petitioner's statements in the Petition that he was guilty of the charged offense, supports counsel's statement that he did not believe Petitioner had a valid good faith defense because Petitioner knew that some of the roe he received from the Wevers was illegally obtained in Oklahoma.  Petitioner has not shown that counsel performed below the level expected from a reasonably competent attorney in criminal cases by failing to inform him of a defense that counsel reasonably did not believe was available to Petitioner.  See Strickland, 466 U.S. at 687-88.

Therefore, on this claim, Petitioner fails to show that the representation provided by counsel was deficient or prejudicial as required by Strickland.  Accordingly, the Court denies Petitioner's ineffective assistance of counsel claim on this ground.

## B. KNOWING AND VOLUNTARY PLEA

To the extent that Petitioner is attempting to directly challenge the validity of his guilty plea upon grounds 7 and 8 set forth above, the Court finds that such a claim is without merit. Petitioner did not directly appeal his claim that his plea agreement was unknowing and involuntary.  It is settled law that the voluntariness and intelligence of a guilty plea can be

"attacked on collateral review only if first challenged on direct review." See United States v. Basle, 523 U.S. 614, 621 (1998).  Thus, Petitioner's claim in this regard is subject to the procedural default rule.  When a defendant has procedurally defaulted on a claim by failing to raise it on direct appeal, the claim may still be raised in a habeas proceeding if the defendant can first demonstrate either "cause" for defaulting on the claim and "actual  prejudice," Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainright v. Sykes, 433 U.S. 72, 87 (1977), or "actual innocence," Sawyer v. Whitley, 505 U.S. 333, 339 (1992) (noting that "actual innocence" means factual innocence, not mere legal insufficiency.)

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his ability to raise an issue on direct appeal.  See Murray, 477 U.S. at 488. Examples of such external factors include the discovery of new evidence or a change in the law. Id.  As for prejudice, a petitioner must show not merely that the errors alleged created a possibility of prejudice, "but that they worked to his actual and substantial disadvantage," infecting the entire case with errors of constitutional dimensions.  Frady, 456 U.S. at 168. Petitioner has failed to meet his burden of establishing "cause" and "actual prejudice."  He gives no valid reason for his failure to raise this claim on direct appeal.  Petitioner states no change in the law or discovery of new evidence which would provide cause for his failure to raise this claim on appeal.  Moreover, as set forth below, Petitioner has not shown that the alleged errors "worked to his actual and substantial disadvantage," Frady, 456 U.S. at 168, and so has failed to establish prejudice.   As such, Petitioner's claims are procedurally defaulted and hereby dismissed.

Further, even if Petitioner's claim were not procedurally barred,  Petitioner's claim, as a matter of law, does not form a sufficient basis for relief for the reasons set forth above. Accordingly, Petitioner has failed to show that his guilty plea was not voluntary, and his claim for relief is hereby denied on this ground.

IV

For the reasons stated above, Petitioner's motion pursuant to 28 U.S.C.  § 2255 to vacate, set aside, or correct a federal sentence filed in case numbers 03-CR-72-P (Docket No. 41) and Case No. 04-CV-566-P (Docket No. 1) is hereby denied.

IT IS SO ORDERED this 14th day of July 2005.

James H. Payne
United States District Judge
Northern District of Oklahoma